

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JAN 22 2019
ARTHUR JOHNSTON
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ROBERT CARD,

    Plaintiff,

-VS-

TOYOTA MOTOR CREDIT
CORPORATION d/b/a TOYOTA
FINANCIAL SERVICES,

    Defendant.

_____/

CASE NO.: 3:19-cv-55-DCB-JCG

DEMAND FOR TRIAL BY JURY

## COMPLAINT

Plaintiff, Robert Card (hereinafter "Plaintiff"), by and through the undersigned counsel, sues Defendant, Toyota Motor Credit Corporation d/b/a Toyota Financial Services (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner

1

at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. Jurisdiction and venue, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction and federal question jurisdiction, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, which provides that the District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and, this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). *See Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. The alleged violations described herein occurred in Rankin County, Mississippi. Accordingly, venue is appropriate with this Court under 28 U.S.C. § 1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person and citizen of the State of Mississippi, residing in Rankin County, Mississippi.

9. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant is a corporation responsible for attempting to collect an alleged consumer debt from Plaintiff.

11. Defendant is a corporate entity with its principal place of business located at 19001 S. Western Avenue, Torrance, California 90501, and which conducts business within the State of Mississippi through its registered agent, C T Corporation System located at 645 Lakeland East Drive, Suite 100, Flowood, MS 39232.

12. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number at issue in this action, (601) ***-1220 (hereinafter "cellular telephone"), and was the called party and recipient of Defendant's hereinafter described calls.

13. Defendant intentionally, knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone, within the last

3

four years, with such frequency as can reasonably be expected to harass and in effort to collect upon an alleged debt.

14. Upon information and belief, some or all of the calls Defendant placed to Plaintiff's cellular telephone were placed using an "automatic telephone dialing system" (hereinafter "ATDS"), which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "ATDS calls"). See *Marks v. Crunch San Diego, LLC*, 904 F. 3d 1041 (9th Cir. 2018).

15. Furthermore, each of the calls at issue were placed by Defendant using an artificial or prerecorded voice, as specified by the TCPA, 47 U.S.C § 227(b)(1)(A).

16. Over approximately the last five years, Defendant began bombarding Plaintiff's cellular telephone in attempt to collect an alleged debt related to an auto loan.

17. Upon receipt of the calls, Plaintiff's caller identification feature identified the calls were being initiated from, but not limited to, the phone numbers: (215) 956-5916; (678) 746-5507; (410) 415-4388; (203) 926-2527; (800) 874-8822, and; (800) 874-8824; and when those numbers are called, the caller is met with an automated message that states: "Thanks for calling Toyota Financial Services."

18. On several occasions over the last five (5) years, going back to at least 2013, Plaintiff instructed Defendant's agents to stop calling his cellular telephone.

19. Upon Plaintiff's receipt of one such call from Defendant, in or about January 2016, Plaintiff answered the call, received Defendant's artificial or prerecorded

message, held on the line to be connected to a live agent/representative and informed said agent/representative to immediately cease all calls to his cellular telephone; furthermore, Plaintiff informed Defendant's aforementioned agent/representative that its incessant calls were harassing him and demanded Defendant immediately cease all calls to his cellular telephone; thereby, unequivocally revoking any previously perceived expressed consent to be called using Defendant's ATDS (including a predictive dialer), artificial voice or prerecorded message.

20. During the aforementioned phone conversation with Defendant's agent/representative, Plaintiff explicitly revoked any previously perceived expressed consent Defendant may have believed it had for placement of telephone calls to Plaintiff's cellular telephone by the use of an ATDS or artificial voice or prerecorded message.

21. Each subsequent call Defendant placed to Plaintiff's cellular telephone was done so after he revoked consent and without the express consent of Plaintiff.

22. Each subsequent call Defendant placed to Plaintiff's cellular telephone was knowingly and willfully placed to his cellular telephone without express consent.

23. On multiple occasions, Plaintiff informed Defendant to immediately cease calling his cellular telephone; however, despite these attempts, Defendant's calls to Plaintiff's cellular telephone continued.

24. Defendant called Plaintiff on his cellular telephone in excess of one hundred (100) times since 2013, and in excess of eighty (80) times since January 2016, when Plaintiff revoked consent, in attempt to collect an alleged debt.

25. Due to the inordinate volume of calls Plaintiff received, Plaintiff was unable to maintain a fully contemporaneous call log of each and every call he received from Defendant.

26. Defendant has, or should be in possession and/or control of, call logs, account notes, autodialer reports and/or other records that detail the exact number of calls it placed to Plaintiff.

27. Despite actual knowledge of its wrongdoing, Defendant continued its campaign of abuse by continuing to call Plaintiff despite not having Plaintiff's express consent to call his cellular telephone.

28. Defendant has corporate policies and/or procedures to use an ATDS or artificial voice or prerecorded message, and to place autodialed calls, just as it did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, including Defendant, to permit, elect, or invoke the removal of Plaintiff's cellular number from Defendant's call list.

29. The structure of Defendant's corporate policies and procedures permits the continuation of calls to individuals like Plaintiff, despite these individuals revoking any consent, or perceived consent, Defendant may have believed it had to place such calls.

30. Defendant's corporate policies and procedures provided no means for Plaintiff to have his cellular number removed from Defendant's call list; or, otherwise invoke and/or request the cessation and/or suppression of calls to Plaintiff from Defendant.

31. Defendant has corporate policies or procedures of using an ATDS or an artificial voice or prerecorded message to collect alleged debts from individuals, such as Plaintiff, for its financial benefit.

32. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call consumers.

33. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

34. Defendant has numerous complaints against it, across the country, asserting that its ATDS continues to call individuals who have revoked consent to be called by Defendant.

35. Defendant knowingly employs methods and/or has corporate policies and/or procedures designed to harass and abuse individuals such as Plaintiff.

36. Defendant knowingly employs methods that do not permit the cessation or suppression of autodialed calls to Plaintiff's cellular telephone.

37. None of Defendant's telephone calls placed to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

38. As recently acknowledged by Judge Easterbrook of the Seventh Circuit Court of Appeals in *Patriotic Veterans, Inc. v. Zoeller*, "every call uses some of the phone owner's time and mental energy, both of which are precious." 845 F. 3d 303, 305-06 (7th Cir.), *cert. denied sub nom. Patriotic Verterans, Inc. v. Hill*, 137 S. Ct. 2321, 198 L. Ed. 2d 725 (2017).

39. For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from the occupation of his cellular telephone line and cellular telephone by unwelcomed calls which made the cellular phone unavailable for legitimate incoming or outgoing calls.

40. For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from unnecessary expenditure of his time. The time Plaintiff spent on answered calls was unnecessary because he repeatedly asked for calls to stop. Additionally, Plaintiff expended unnecessary time for unanswered calls by dealing with notifications and call logs that reflected the unwanted calls. Furthermore, this also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

41. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff.

42. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

43. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of trespass to Plaintiff's chattel, namely his cellular telephone and cellular telephone services.

44. As a result of aforementioned tenacious phone calls and collection efforts, Plaintiff was affected, both personally and individually, as he experienced an invasion of

privacy and the intrusion upon his right of seclusion. Plaintiff also suffered from stress, anxiety, and embarrassment. Furthermore, Plaintiff was hindered by the loss of phone battery life and phone minutes as well as the cost of additional charging, and the intrusion upon and occupation of the capacity of his cell phone. All of the abovementioned were caused by, and/or directly related to, Defendant's attempts to collect a consumer debt allegedly owed by Plaintiff.

## COUNT I
### (Violation of the TCPA)

45. Plaintiff incorporates and realleges paragraphs one (1) through forty-four (44) as if fully set forth herein.

46. Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the ATDS calls it made to Plaintiff's cellular telephone after Plaintiff notified and requested Defendant that he wished for the calls to immediately cease.

47. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS or artificial voice or prerecorded voice message without Plaintiff's prior express consent and in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

Respectfully submitted,

_____
ROCKY WILKINS, ESQUIRE
Mississippi Bar No #:  99707
Morgan & Morgan, PLLC
4450 Old Canton Road, Suite 200
Telephone: (601) 503-1654
Facsimile: (601) 503-1606
Primary Email: Rocky@ForThePeople.com
Secondary Email:SHill@ForThePeople.com

*Attorney for Plaintiff*